UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

DISABILITY RIGHTS LOUISIANA      \*    CIVIL ACTION NO. _____
      \*
    versus           \*
      \*
NANCY LANDRY, in her official capacity as    \*
Secretary of State of the State of Louisiana; and    \*
ELIZABETH MURRILL, in her official capacity    \*
as Attorney General of the State of Louisiana    \*

## **COMPLAINT**

1.      This is a Voting Rights Act case with urgent and immediate implications for the upcoming 2024 federal election. This case is necessitated by legislation passed by the Louisiana legislature and recently signed into law by the governor. The new laws will disenfranchise hundreds or thousands of individuals with disabilities and threaten criminal liability for those who seek to assist them with voting.

2.      Given the substantial interests at stake, and given the upcoming presidential election, Plaintiff will be filing a motion for preliminary injunction imminently.

3.      As is set forth below, the laws at issue violate the rights of the constituents of Plaintiff in various ways.

4.      The four new Louisiana statutes at issue are Louisiana Act No. 302 (formerly SB 155), Act No. 317 (formerly SB 218), Act No. 380 (formerly HB 476), and Act No. 712 (formerly HB 581) ("Statutes at Issue").[1]

5.      The infirmities with the Statutes at Issue fall within two buckets.

---

[1] Also challenged in this action is R.S. 18:1306(E)(2)(a), which emanated from 2020 Louisiana Act 210 (formerly SB 75). The challenged language from R.S. 18:1306(E)(2)(a) did not have any teeth until Louisiana Act No. 302 (formerly SB 155) and Louisiana Act No. 712 (formerly HB 581) were recently passed.

6.    *First*, language from Act No. 380 (formerly HB 476) and Act No. 317 (formerly SB 218) violates the text of the Voting Rights Act by prohibiting anyone from assisting with delivery of more than one absentee ballot and criminalizes the same. This conflicts with the requirement of Section 208 of the Voting Rights Act which entitles individuals with disabilities to assistance by "a person of the voter's choice…." Hereinafter informally referred to as the "**One Delivery Restriction**."

7.    *Second*, language from Act No. 712 (formerly HB 581) and Act No. 302 (formerly 155), and R.S. 18:1306(E)(2)(a) violate the text of the Voting Rights Act by prohibiting anyone from serving as a witness on more than one ballot or assisting more than one individual with their absentee ballot and criminalizes the same. This conflicts with the requirement of Section 208 of the Voting Rights Act which entitles individuals with disabilities to assistance by "a person of the voter's choice…." Hereinafter informally referred to as the "**One Witness Restriction**."

8.    The Statutes at Issue go into effect at different times.

9.    The **One Delivery Restriction** goes into effect on <u>August 1, 2024</u>.

10.    The **One Witness Restriction** goes into effect on <u>July 1, 2025</u>.

11.    The Statutes at Issue will disenfranchise Louisiana's most vulnerable citizens. Therefore, to protect the substantial and critical voting rights of individuals with disabilities in Louisiana, Plaintiff seeks preliminary and permanent injunctive relief, declaratory relief, remedial action, and attorney fees/costs.

<u>**JURISDICTION AND VENUE**</u>

12.    This Court has jurisdiction to hear this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1357.  This action arises under the Supremacy Clause of the United States Constitution, article VI, clause 2; Section 208 of the Voting Rights Act, 52 U.S.C. § 10508; and 42 U.S.C. § 1983.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this district, and at least one Defendant maintains her principal place of business and resides in the district and all other Defendants are residents of Louisiana.

14.    Further, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

15.    Plaintiff Disability Rights Louisiana ("DRLA") is a non-profit corporation organized under the laws of the State of Louisiana.  DRLA is a protection and advocacy agency ("P&A"), as that term is defined under the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15041 *et seq.*, the Protection and Advocacy for Individuals with Mental Illness Act of 1986, 42 U.S.C. § 10801 *et seq.*, and the Protection and Advocacy of Individual Rights Act, 29 U.S.C. § 794e *et seq.*  DRLA maintains offices in New Orleans and Lafayette but serves clients statewide.

16.    As the P&A for Louisiana, DRLA is specifically authorized to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of individuals with disabilities.  42 U.S.C. §15043(a)(2)(A)(i).

17.    All Louisiana voters with disabilities are constituents of DRLA. DRLA is accountable to all members of the disability community and is authorized under federal law to represent the interests of all Louisiana citizens with disabilities. DRLA operates under the direction of a board of directors who oversees its goals and priorities in fulfilling its mandate.

18.    Protecting the voting rights of individuals with disabilities is germane to DRLA's purpose and mission.  DRLA effectuates this mission by assisting Louisiana voters with the steps

3

of the voting process, from voter registration to monitoring polling accessibility.  DRLA has and continues to operate a voting hotline where those who have trouble voting due to a disability may call and obtain assistance.

19.     Defendant Nancy Landry, sued in her official capacity, is the Secretary of State of Louisiana.  Secretary Landry is the chief election official for Louisiana.  La. Const., art. 4, Sect. 7. Secretary Landry is responsible to "prepare and certify the ballots for all elections, promulgate all election returns, and administer the election laws, except those relating to voter registration and custody of voting machines."  *Id.*

20.     Defendant Elizabeth Murrill, sued in her official capacity, is the Louisiana Attorney General. The responsibilities of the Louisiana Attorney General's Office include investigation of violations of criminal laws, prosecution of criminal cases, providing assistance to district attorneys in criminal cases, and maintaining "integrity in government[.]"[2]

21.     Defendant Murrill is reasonably expected to enforce the criminal statutes at issue and prosecute individuals who run afoul of the Statutes at Issue while assisting individuals with disabilities.

## FACTUAL ALLEGATIONS

22.     In Louisiana—a state of more than 4.5 million citizens—a mere three instances of election fraud have been identified since 2016 (an eight-year period).[3] There is no indication that Louisiana law enforcement has failed to actively guard Louisiana elections or investigate allegations of fraud. Elections in Louisiana are fair and free.

---

[2] https://www.doa.la.gov/media/sj2f3us0/04b_office_of_the_attorney_general.pdf (last accessed 2024/6/26); see also, La. R.S. 36:704.
[3] https://lailluminator.com/2024/03/31/absentee-ballot/ (last accessed 2024/6/27)

23.     Despite the absence of a problem, in 2023 and 2024, in advance of the upcoming 2024 presidential election, the Louisiana legislature passed, and the governor signed, multiple bills that amount to the criminalization of the provision of assistance or accommodations to voters with disabilities. The Statutes at Issue facially violate the Voting Rights Act and threaten to make criminals of the caretakers, nurses, doctors, or others who assist individuals with disabilities and the elderly.

24.     An estimated one in three adults in Louisiana, over 1,165,577 people, have a disability.[4]

25.     In general, people with disabilities disproportionately rely upon absentee voting because of difficulties with mobility, limited access to transportation, risks associated with in-person voting, accessibility barriers at polling places, or residency status in an institution.[5]

26.     Many Louisiana voters with disabilities rely on the ability to vote absentee by mail to participate in elections. In the most recent Louisiana gubernatorial contest in October 2023, over 95,000 Louisiana voters voted absentee by mail.[6] This number includes many Louisiana voters with disabilities.

27.     Some Louisiana voters must vote absentee in order to participate in an election at all. These voters include, but are not limited to, voters with disabilities who reside in nursing homes, hospitals, or another congregate setting and who are unable to travel to a polling place on

---

[4] https://www.cdc.gov/ncbddd/disabilityandhealth/impacts/louisiana.html (last accessed 2024/7/1)
[5] *See* Danielle Root & Mia Ives-Rublee, *Enhancing Accessibility in U.S. Elections*, Ctr. for Am. Progress, (July 2021), https://search.issuelab.org/resource/enhancing-accessibility-in-u-s-elections.html (last visited 2024/7/1).
[6] https://electionstatistics.sos.la.gov/Data/Early_Voting_Statistics/statewide/2023_1014_StatewideStats.pdf (last visited 2024/6/26)

election day or for early voting. Some voters with mobility impairments may also have difficulty physically accessing polling places and may choose to vote absentee by mail.

28.    Louisiana voters with a disability may need assistance from another person to submit an application for an absentee ballot, to complete the absentee ballot, or to return an absentee ballot to the United States Postal Service or parish registrar.

29.    The Statutes at Issue contain new restrictions on absentee voting that impose criminal penalties on certain forms of assistance for absentee voters, including absentee voters with disabilities. These restrictions will cause some people with disabilities to be unable to receive assistance with voting from the person of their choice that they trust, causing them to be disenfranchised.

30.    This action challenges certain provisions of the Louisiana Election Code that prevent Louisiana voters with disabilities from requesting assistance with voting from a person of the voter's choice. These Louisiana state voting laws are preempted by federal law, specifically Section 208 of the Voting Rights Act of 1965. Recognizing that voters with disabilities are disproportionately denied access to voting, Congress amended the Voting Rights Act in 1984 to ensure that people who require assistance in voting due to disability, blindness, or inability to read or write can receive assistance "from a person of the voter's choice."  52 U.S.C. § 10508.

31.    That right to choose a person of the voter's choice for assistance applies to all aspects of the voting process regardless of the method by which the voter lawfully chooses to vote. *OCA-Greater Houston v. Texas,* 867 F.3d 604, 614-15 (5th Cir. 2017).

32.    Louisiana's voting restrictions contained within the Statutes at Issue infringe upon this federal statutory right. Rather than having the right to receive help from "a person of the voter's choice" as guaranteed by Section 208 of the Voting Rights Act, Louisiana voters with disabilities

6

will now face substantially limited options due to the Statutes at Issue. They may only seek help from an immediate family member, as defined by the Louisiana Election Code, or from another person only if that person has not and will not assist anyone else. Thus, for example, an individual with a disability living in a congregate setting such as a nursing home or group home may not receive assistance from a staff member of that facility to submit an absentee ballot to vote, or with an initial application to vote via absentee ballot, if that staff member has or plans to help any other resident or patient with voting.

33.    Under Section 208 of the Voting Rights Act, voters with disabilities have the right to choose any trusted individual to deliver their ballot to the United States Postal Service or the parish registrar for counting. The Statutes at Issue now prohibit a nurse, caregiver, physician, pastor, or other individual from assisting more than one individual with a disability with witnessing their ballot or delivering their ballot for voting.

34.    As a result of the Statutes at Issue, individuals with disabilities cannot choose to obtain assistance from a trusted individual if that individual has helped one other voter or is not an immediate family member. Voters who are unable to leave a congregate setting, such as a hospital, nursing home, or group home, to personally deliver their ballot to the United States Postal Service or parish registrar will likely be unable to vote at all if no immediate family member is available to deliver the ballot. Indeed, many facilities are likely to bar staff from assisting a patient or resident with return of an absentee ballot due to fear of running afoul of the criminal penalties in the Statutes at Issue.

35.    By criminalizing integral parts of the voting process, the Statutes at Issue also chill individuals and organizations who believe in the importance of voting and who are committed helping voters who need assistance.

36.    The Statutes at Issue disparately impact individuals with disabilities, who often need assistance with voting and/or balloting.

**A.  The Voting Rights Act Guarantees Voters with Disabilities and Voters Who Lack Literacy the Right to Assistance from a Person of Their Choice.**

37.    Section 208 of the Voting Rights Act provides: "Any voter who requires assistance to vote by reason of blindness, disability, or inability to read or write may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 52 U.S.C. § 10508.

38.    According to the Fifth Circuit, the "unambiguous language" of the Voting Rights Act "guarantees to voters [the] right to choose any person they want . . . to assist them throughout the voting process," including the steps necessary to "having [the] ballot counted properly." *OCA-Greater Houston*, 867 F.3d at 615.

39.    Congress's intent in enacting Section 208 of the Voting Rights Act is clear from both the text and the legislative history. The Report of the Senate Judiciary Committee articulated the problem that Congress sought to address: "[c]ertain discrete groups of citizens are unable to exercise their rights to vote without obtaining assistance in voting, including aid within the voting booth" and "many such voters may feel apprehensive about casting a ballot in the presence of, or may be misled by, someone other than a person of their own choice." S. Rep. No. 97-417, at 62 (1982). Accordingly, the purpose of Section 208 is "to limit the risks of discrimination against voters in these specified groups and avoid denial or infringement of their right to vote." *Id*.

40.    Section 208 of the Voting Rights Act empowered covered voters to receive assistance from almost anyone of their choice because it was "the most effective method of providing assistance," *id.* at 64, and "the only way to assure meaningful voting assistance and to

avoid possible intimidation or manipulation of the voter." *Id.* at 62. "To do otherwise would deny these voters the same opportunity to vote enjoyed by all citizens." *Id.*

41.     The Committee explicitly wrote that Section 208 of the Voting Rights Act is intended to preempt state law when state law "[denies] the assistance at some stages of the voting process during which assistance was needed." *Id.* at 63.

**B. The Statutes at Issue Limit the Rights of Voters with Disabilities and Those Associated with Them.**

**"One Delivery Restriction"**

42.     Language from **Louisiana Act No. 380** (formerly **HB 476**) and **Louisiana Act No. 317** (formerly **SB 218**) violate the text of the Voting Rights Act by prohibiting anyone from assisting with delivery of more than one absentee ballot application or absentee ballot and criminalizes the same.

43.     **Louisiana Act No. 380** has been edited to read as follows:

> "No person except the immediate family of the voter, as defined by this Code, shall submit by any means or send for delivery by the United States Postal Service or commercial courier more than one marked ballot per election to the registrar."

44.     **Louisiana Act No. 317** states that:

> "No person except the immediate family member of the voter, as defined in this Code, shall submit by any means or send for delivery by the United States Postal Service or commercial courier more than one marked ballot application per election to the registrar of voters."

45.     **Louisiana Act No. 317** further criminalizes the "collection of … absentee by mail ballots in violation of this Title."

46.     These restrictions conflict with the requirement of Section 208 of the Voting Rights Act which entitles individuals with disabilities to assistance by "a person of the voter's choice…"

47.     As previously stated, rather than having the right to help from "a person of the voter's choice" as guaranteed by Section 208 of the Voting Rights Act, Louisiana voters with disabilities will now face substantially limited options. They may only seek help from an immediate family member (if they have one ready willing and able to assist), as defined by the Louisiana Election Code, or from another person if that person has not and will not assist anyone else.

"**One Witness Restriction**."

48.     **Louisiana Act No. 302** (formerly **SB 155**), **Louisiana Act No. 712** (formerly **HB 581**), and **R.S. 18:1306(E)(2)(a)**, taken together, violate the text of the Voting Rights Act by prohibiting anyone from serving as a witness on more than one ballot or assisting more than one individual with their absentee ballot.

49.     Louisiana law requires that each person voting via absentee ballot must ensure that a "certificate" is completed and accompanies their ballot. *See* La. R.S. 18:1308. Said simply, each absentee ballot requires a witness.

50.     2020 Louisiana Act 210 (formerly SB 75) states "No person except the immediate family member of the voter, as defined in this Code, shall witness more than one certificate of a voter." At the time, there was no criminal penalty associated with said act, which was codified at R.S. 18:1306(E)(2)(a).

51.     Newly passed **Louisiana Act No. 302** provides teeth to R.S. 18:1306(E)(2)(a) and now prohibits assisting and providing a certificate to more than one voter and makes it a criminal penalty to witness the certificate of more than one voter.  The only exceptions are for the immediate family members of a voter and employees of the registrar of the voters or the election division of the Department of State.

52.     Likewise, **Louisiana Act No. 712** makes it a criminal act to "Witness more than one certificate of a voter who is not an immediate family member in violation of R.S. 18:1306."

53.     These laws conflict with the requirement of Section 208 of the Voting Rights Act which entitles individuals with disabilities to assistance by "a person of the voter's choice…."

54.     Rather than having the right to receive help from "a person of the voter's choice" as guaranteed by Section 208 of the Voting Rights Act, Louisiana voters with disabilities will now face substantially limited options. They may only seek help from an immediate family member, as defined by the Louisiana Election Code, or from another person if that person has not and will not assist anyone else. Many individuals with disabilities who do not have an immediate family member to provide assistance will be disenfranchised.

55.     **Louisiana Act No. 302** (formerly **SB 155**), **Louisiana Act No. 712** (formerly **HB 581**), and R.S. 18:1306(E)(2)(a) directly conflicts with Section 208 of the Voting Rights Act by impermissibly narrowing the universe of people who may assist in the voting process, disrupting the balance that Congress has struck. Under the Supremacy Clause of the U.S. Constitution, federal law preempts conflicting state law.

## C.  These Laws Limit the Voting Rights of the Constituents of Disability Rights Louisiana.

56.     One of the constituents of Disability Rights Louisiana that will be affected by the Statutes at Issue is Ashley Volion.

57.     Ms. Volion is an individual with a disability who lives in LaPlace, Louisiana in St. John the Baptist Parish.

58.     Ms. Volion's immediate family members, who are her mother, father, brother and sister, all live in Lafitte, Louisiana, in Jefferson Parish.

59.     Ms. Volion has been a registered voter in the State of Louisiana since she was 18 years old.

60.     Through her work with Disability Rights Louisiana, Ms. Volion leads the accessibility division for the voting rights coalition. Ms. Volion works the phone lines from the start of voting day to the end of voting day. Because of this, Ms. Volion is unable to vote on election day.

61.     In addition to work obligations, there are multiple reasons that Ms. Volion needs to vote absentee. Ms. Volion has a power wheelchair, so if there is inclement weather, she cannot have her wheelchair exposed to the rain. If her attendants are sick and unable to drive herself to her polling site, she cannot take herself. Ms. Volion lives in an area that does not have reliable public transportation.

62.     Absentee ballots allow Ms. Volion to participate in the voting process in a way that is accessible and works for her circumstances.

63.     Ms. Volion applied to vote via absentee ballot during the Covid-19 pandemic and she estimates that she has voted via absentee ballot 6 times since she applied.

64.     When Ms. Volion has voted via absentee ballot, she would receive a voter link via email approximately three weeks prior to the election by the office of the registrar of voters. The voter link would bring Ms. Volion to the actual ballot. Ms. Volion would make her choices on the ballot electronically.

65.     Ms. Volion would then print out the ballot and have one of her personal care attendants sign as a witness.

66.     Ms. Volion would then put the ballot into an envelope, address and seal it.

67.     Ms. Volion's personal care attendant would drive her to the post office.

68.    Ms. Volion's personal care attendant would physically place the ballot into the outgoing mailbox inside of the physical post office building because the outside mailboxes are typically unavailable during voting. Ms. Volion relies on her attendant to bring the mail into the post office because of the barriers present to physically access the building and then access the location where mail outgoing mail is deposited.

69.    Ms. Volion's immediate family members all live approximately an hour or more away and have full-time jobs and obligations. Ms. Volion's parents are elderly and have disabilities themselves. Ms. Volion has personal care attendants through the New Opportunities Waiver ("NOW") 24 hours a day, 7 days a week that provides her the assistance that enables her to live in the community.

70.    If the Statutes at Issue take effect as written, Ms. Volion fears that she will be restricted in who will be able to assist her with her absentee ballot. Ms. Volion only has two personal care attendants. One of her two attendants has more than one client and may be assisting other clients with their absentee ballots. For the other personal care attendant, Ms. Volion does not know how many other individuals said attendant may serve as a witness for or otherwise provide assistance.

71.    If Ms. Volion asks said personal care attendant to witness the absentee ballot, it could put the personal care attendant at risk of criminal charges. The Statutes at Issue, as written, would not allow Ms. Volion to vote in the way that she needs to or to receive assistance from a person of her choice.

72.    Likewise, Ms. Volion does not know if her personal care attendants will have collected and walked more than one absentee ballot into a post office or other collection location.

73.    The **One Delivery Restriction** and **One Witness Restriction** laws, as written, could restrict Ms. Volion's ability to vote in the future. If Ms. Volion is unable to receive assistance from a person of her choice, she may not be able to have anyone to assist her with submitting her absentee ballot. Ms. Volion does not wish to put any of her attendants at risk of criminal charges. If one of her personal care attendants are unable to assist her, Ms. Volion is concerned whether she would be able to vote at all.

74.    If one of Ms. Volion's personal care attendants did face criminal charges due to a violation of the Statutes at Issue with a possibility of jail time, it would put Ms. Volion's health and safety at risk by not having a personal care attendant available for her care. Ms. Volion would then have to decide between her right to vote and her right to receive necessary medical care to keep her safe and live independently in the community.

75.    Individuals who are inpatient in Eastern Louisiana Mental Health System ("ELMHS") are all subject to harm should the Statutes at Issue take effect. ELMHS is one of the state-owned mental health hospitals and houses individuals long-term.

76.    Individuals housed at ELMHS vote via absentee ballot because they are not allowed to physically go to a polling place.

77.    The process for voting for individuals at ELMHS is the absentee ballots are mailed to ELMHS for each individual who is registered to vote and has completed an absentee ballot application. ELMHS staff distribute the mail as it arrives.

78.    Upon filling out their ballot, the certification must be completed by a witness.

79.    Once the individuals complete their absentee ballots, they give them to staff to be processed with the outgoing mail. They must rely upon staff to send their outgoing mail because they cannot go to the post office themselves due to their inpatient status.

14

80.    Many of the individuals housed at ELMHS do not have immediate family members who could help them because they live far away, they do not have a relationship with them, or they no longer have living immediate family members. Regardless of the reason, the end result is that staff must provide assistance in order for these individuals to exercise their right to vote.

81.    If the Statutes at Issue take effect, staff would not be able to assist more than one patient in completing or submitting their absentee ballot. Given the large number of residents at the ELMHS, some patients may not be able to vote at all.

82.    Likewise, the Statutes at Issue will negatively impact nursing home residents.

83.    For example, the Activities Director at the Chateau de Notre Dame Community Care Center in New Orleans, Louisiana (hereinafter "Chateau") has job responsibilities that include assisting residents with voting.

84.    The residents of Chateau are either disabled, elderly, or elderly and with a limitation to a life function such that they constitute a person with a disability under the Americans with Disabilities Act.

85.    The Activities Director of Chateau provides voter registration forms on site for newly arrived residents.

86.    The Activities Director of Chateau maintains a registry of residents who vote in person and by mail-in ballot.

87.    For those residents who vote in person, the Activities Director assists with getting them to their polling place.

88.    For those residents who vote by mail-in ballot, the Activities Director will often assist the residents in requesting, completing, and submitting mail in ballots.

89.     Often, a representative from the registrar of the voters has arrived at Chateau to assist with the voting process. At this time, the Activities Director will collect the absentee ballots and hand them together to the representative from the register of the voters.

90.     When a representative from the registrar of the voters has not arrived at Chateau, the Activities Director's practice has been to collect the absentee ballots, in accordance with the registry, and leave them with the receptionist, who will then hand the ballots over to a U.S. postal employee.

91.     Upon information and belief, the system described above, where a postal employee delivers mail to the one address for a nursing home, is the standard practice. A postal employee does not go room-to-room in a nursing home. As such, at each nursing home where mail is collected for delivery, one employee will naturally have to handle multiple absentee ballots.

92.     The Activities Director of Chateau will be significantly restricted as a result of the Statutes at Issue.

93.     Unless the Statutes at Issue are enjoined by this Court, the Activities Director of Chateau will have to attempt to find one person to handle each ballot of each resident. If the Activities Director is unable to find a sufficient number of individuals, some of the residents of Chateau may be unable to have anyone assist them with submitting their ballot.

94.     Moreover, it is entirely plausible that the residents will have to rely upon third parties they do not trust instead of the Activities Director, whom they have a rapport with and who works with them on a regular basis.

95.     The Activities Director and their co-workers are unwilling to be put at risk of criminal charges for helping residents vote. Thus, if there are insufficient staff members available to cover the voting needs of residents on the registry, some may end up being unable to vote.

96.     Another constituent of DRLA that will be negatively impact by the Statutes at Issue is Mr. Adrian Bickham, an individual with a disability with limited use of his hands.

97.     Mr. Bickham relies entirely on his personal care attendant ("PCA") to assist him with day-to-day activities, including completing his absentee ballot. Mr. Bickham is a registered voter and has voted via absentee ballot in the past and intends to utilize that option again in the future.

98.     Mr. Bickham's immediate family members are not a reliable option to assist him with voting because they are elderly or have their own lives. Mr. Bickham is unable to rely on them to assist him with his voting needs.

99.     When Mr. Bickham has voted via absentee ballot, his PCA has assisted him in every step of the process. The PCA will obtain the ballot for Mr. Bickham and he will indicate what selections he wants to make. Mr. Bickham's PCA will finalize the ballot for him.

100.    If Mr. Bickham needs to sign paperwork, he can either make a mark myself or his PCA will write "Verbal Authorization Given" for the signature and will sign as a witness.

101.    Mr. Bickham's PCA would then put it into an envelope, address and seal it before taking it to the post office to be mailed.

102.    Mr. Bickham's PCA has other clients and Mr. Bickham has no way of knowing if they assist other clients with voting activities.

103.    If the voting laws take effect as written, Mr. Bickham could be restricted in who is able to assist him with his absentee ballot. If Mr. Bickham's PCA assists another client, the PCA may not be able to assist Mr. Bickham. If Mr. Bickham asks his PCA to assist him, it could put his PCA at risk of criminal charges in the future. The new laws, as written, would not allow Mr. Bickham to vote in a way that he needs to or to receive assistance from a person of his choice.

104.    Mr. Bickham does not typically vote in person because of the accessibility barriers to doing so. There are commonly accessibility issues for Mr. Bickham to get into the polling place, for Mr. Bickham to access the voting booth, and to be able to have Mr. Bickham's PCA physically manipulate the voting machine according to how he wants to vote.

105.    By absentee voting, Mr. Bickham can focus his efforts and time on the substance of the questions before him instead of overcoming the challenges of reaching the polling place. By voting absentee, Mr. Bickham is not rushed in the way that he would feel if he was inside the polling place, behind other potential voters, and attempting to overcome his physical limitations.

106.    The Statutes at Issue, as written, could restrict Mr. Bickham's ability to vote in upcoming and imminent elections. If Mr. Bickham is unable to receive assistance from a person of his choice, he may not be able to have anyone to assist him with submitting his absentee ballot. Mr. Bickham could not put his PCA at risk of criminal charges. Mr. Bickham is concerned that, if his PCA is unable to assist him, he would be able to vote at all.

107.    If any of his PCAs did face criminal charges due to a violation of these laws with a possibility of jail time, it would put his health and safety at risk by not having an attendant available for his care. The decision would be between his right to vote and his right to receive necessary care to keep him safe and live independently in the community.

### COUNT I – VIOLATION OF THE VOTING RIGHTS ACT – DIRECT CLAIM

108.    Plaintiff repeats and incorporates herein Paragraphs 1 through 107 above.

109.    For the reasons set forth above, the **One Delivery Restriction** and the **One Witness Restriction** violate Section 208 of the Voting Rights Act.

110.    Even if a voter has someone else from whom they *could* conceivably seek assistance, Section 208 guarantees voters the right to rely on a person of their choice, and the denial of that choice alone undermines the purposes and objectives of Section 208.

111.    Furthermore, because of the Statutes at Issue, individuals who have provided voter assistance in the past now fear prosecution if they assist in the future. The potential criminal liability will have a chilling effect on those who would otherwise assist.

112.    Through Section 208, Congress expressed that voters must have broad discretion to ask someone of their choice for help—unless that person is associated with their employer or labor union. S.B. 2358 directly contravenes the careful balance that Congress has struck by imposing additional restrictions on assistance.

113.    The One Delivery Restriction and the One Witness Restriction therefore "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" and should be preempted. *Arizona v. United States*, 567 U.S. 387, 406 (2012); *OCA-Greater Houston*, 867 F.3d at 615 (invalidating statute that "impermissibly narrows the right guaranteed by Section 208 of the Voting Rights Act").

114.    Defendants, acting under color of state law, are depriving the members or represented individuals of Plaintiff of a right secured by the laws of the United States.

115.    As such, Plaintiff brings suit under the Voting Rights Act for preliminary and permanent injunctive relief, declaratory relief, and attorneys fees/costs.

### COUNT II – 42 U.S.C § 1983 – VIOLATION OF THE VOTING RIGHTS ACT

116.    Plaintiff repeats and incorporates herein Paragraphs 1 through 115 above.

117.    Plaintiff also sues under 42 U.S.C § 1983 for violation of the Voting Rights Act.

118.    Plaintiff's claim for relief under § 1983 for violation of the Voting Rights Act is based on the same operative facts that are set forth above.

119.    As to a different section of the Voting Rights Act, the Fifth Circuit has concluded that a plaintiff can sue under Section 1983 to enforce the Voting Rights Act. See *Vote.Org v. Callanen*, 89 F.4th 459, 478 (5th Cir. 2023) ("We conclude that private enforcement via Section 1983 does not thwart Congress's enforcement scheme. Vote.org can seek a remedy for Section 10101 violations by way of Section 1983.").

120.    The rights created by Section 208 of the Voting Rights Act "are specific and not amorphous," i.e., they protect the right to vote using "a person of the voter's choice[.]"

121.    As Plaintiff will fully brief to the Court, under Section 1983 a plaintiff can sue to enforce Section 208.

122.    For the reasons set forth above, the One Delivery Restriction and the One Witness Restriction violate Section 208 of the Voting Rights Act.

123.    Defendants, acting under color of state law, are depriving the members or represented individuals of Plaintiff of a right secured by the laws of the United States.

124.    As such, Plaintiff brings suit under § 1983 for preliminary and permanent injunctive relief, declaratory relief, and attorneys fees/costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment providing the following relief:

(1)    Declare that Louisiana Act No. 302, Act No. 317, Act No. 380, Act No. 712, and R.S. 18:1306(E)(2)(a) violate Section 208 of the Voting Rights Act, 52 U.S.C. § 10508, and the Supremacy Clause, and are thereby preempted to the extent of their conflict with federal law;

(2) Preliminarily and permanently enjoin Defendants from implementing or enforcing Louisiana Act No. 302, Act No. 317, Act No. 380, Act No. 712, and R.S. 18:1306(E)(2)(a) to the extent they conflict with federal statutes;

(3) Preliminarily and permanently enjoin Defendants from issuing any instructions or guidance directing any state, county, or local officials to implement or enforce Louisiana Act No. 302, Act No. 317, Act No. 380, Act No. 712, and R.S. 18:1306(E)(2)(a) in a manner that conflicts with federal law;

(4) Order Defendants to rescind any instructions or communications—whether public facing or otherwise—indicating that voters may not seek assistance from any person of their choice with the completion and delivery of absentee ballots by mail, and order Defendants to issue corrective instructions or communications that voters who require assistance due to blindness, disability, or inability to read or write may continue to seek assistance from any person of their choice, except for the exclusions defined under Section 208 of the Voting Rights Act;

(5) Order other remedial relief to be determined following litigation and based on the timing of the injunction;

(6) Grant Plaintiff an award of reasonable attorneys fees, costs, and expenses, including reasonable expert expenses; and

(7) Grant Plaintiff such additional and further relief as this Court deems just and proper.

Respectfully submitted this 10th day of July, 2024,

By:/s/  *Melanie A. Bray*
Melanie A. Bray


BIZER & DeREUS

Attorneys for Plaintiff
Andrew D. Bizer, Esq. (LA # 30396)
andrew@bizerlaw.com

Garret S. DeReus, Esq. (LA # 35105)
gdereus@bizerlaw.com
Eva M. Kalikoff, Esq. (LA # 39932)
eva@bizerlaw.com
3319 St. Claude Ave.
New Orleans, LA 70117
T: 504-619-9999; F: 504-948-9996

***AND***

Melanie A. Bray, La. Bar No. 37049
J. Dalton Courson, La. Bar No. 28542
Disability Rights Louisiana
8325 Oak Street
New Orleans, LA 70118
504-208-4151
504-272-2531 (fax)
mbray@disabilityrightsla.org
dcourson@disabilityrightsla.org