UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

DISABILITY RIGHTS LOUISIANA

VERSUS

NANCY LANDRY, in her official capacity
as Secretary of State of the State of
Louisiana, ET AL.

CIVIL ACTION

NO. 24-554-JWD-SDJ

## RULING AND ORDER

This matter comes before the Court on two motions: (1) the *Motion for Preliminary Injunction* (Doc. 12) ("*MPI*") and (2) the Ex Parte *Motion to Expedite Consideration of Motion for Preliminary Injunction* (Doc. 13) ("*Motion to Expedite*"). Both motions were filed by Plaintiff, Disability Rights Louisiana ("Plaintiff"). Plaintiff seeks to enjoin Louisiana Acts 317 and 380, which Plaintiff claims violate the Voting Rights Act by prohibiting a person with a disability from choosing the individual who will assist them with voting. (Doc. 18 at 1.) According to Plaintiff, these statutes become effective August 1, 2024, so Plaintiff seeks an accelerated briefing schedule, allowing oppositions to the *MPI* to be filed by August 2, 2024, a reply of August 7, and a hearing somewhere between August 8 to August 12. (Doc. 13 at 2.) All of this is intended to allow a decision before the November 5, 2024 election, which is about 99 days away, or a little over three months from now.

This Court is mindful of the "*Purcell* principle," which recognizes "that federal courts ordinarily should not enjoin a state's election laws in the period close to an election" and that the Supreme Court "in turn has often stayed lower federal court injunctions that contravened that principle." *Singleton v. E. Baton Rouge Par. Sch. Bd.*, 621 F. Supp. 3d 618, 627 (M.D. La. 2022) (deGravelles, J.) (quoting *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J.,

concurring) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam))). This Court has found that "somewhere between four months (*Merrill*) and two months (*Husted*) is within the *Purcell* doctrine." *Id.* at 629 (citations omitted). In fact, in *Robinson v. Callais*, 144 S. Ct. 1171 (2024), a district court recently issued an injunction 189 days before an election, and the Supreme Court applied *Purcell* to stay the injunction—174 days before, or about five months and three weeks out—all in a short, paragraph-long order.

But, as Justice Kavanaugh explained in *Merrill*:

> the *Purcell* principle thus might be overcome even with respect to an injunction issued close to an election if a plaintiff establishes at least the following: (i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship.

*Singleton*, 621 F. Supp. 3d at 628 (quoting *Merrill*, 142 S. Ct. at 881 (citations omitted)).

Accordingly, this Court issued a notice stating that *Purcell* was a threshold issue in this case. (Doc. 15.) The Court ordered pocket briefs "on the question of whether *Purcell* bars the requested injunctive relief before the October election" and asked the parties to at least in part specifically address this Court's ruling in *Singleton*, which laid out the *Purcell* principles, and any relevant case law after *Singleton*. (*Id.*)

The parties submitted pocket briefs in accordance with the Court's order. (*See* Docs. 16, 18, and 19.) Plaintiff did not seriously dispute that, timewise, this action fell too close to the election under *Purcell*; rather, Plaintiff argued that it overcame the *Purcell* principle under the above four-part test. (Doc. 18 at 3.) The Attorney General's brief added little to the equation. (Doc. 16.) But the Secretary of State provided a chronology of all the actions required of the Secretary of State between now and election day (some of which have already commenced) and the

2

significant burden that any interference by this Court would cause. (Doc. 19 at 5–9.) The Secretary also submitted the Declaration of Sherri Hadskey, Louisiana Commissioner of Elections, to further support her position. (Hadskey Decl., Doc. 19-1.)

In response to the parties' positions, the Court ordered short, five-page replies to be filed within about twenty-four hours. (Doc. 20.) The Court asked the parties to focus on: "(1) whether the plaintiff unduly delayed in bringing the complaint to court; and (2) whether the changes in question are at least feasible before the election without significant cost, confusion or hardship (including because the relief sought purportedly preserves the status quo)." (*Id.*)

The parties timely filed responses. (Docs. 24–26.) The Attorney General adds a little more this time, highlighting the confusion already present in the case concerning which of the challenged statutes takes effect at which times. (Doc. 24 at 1–3.) Plaintiff explains that any delay in filing suit was caused by its good faith efforts to obtain suitable counsel, (Doc. 26 at 1–3; *see also* Statement of Melanie Bray, Doc. 26-1 (describing efforts to retain counsel)), and Plaintiff then nit-picks various aspects of Defendant's undue burden analysis while further attempting to distinguish this case from *Singleton*, (Doc. 26 at 3–5).

The Secretary of State emphasizes:

> Despite public knowledge that Section 2 of Act 317 and Act 380 would be in effect for the November 5, 2024 election, Plaintiff waited until July 10, 2024 to file its Complaint, 43 days after Act 317 became law and Act 380 was signed by the governor on May 28, 2024. Plaintiff then waited another eight days to request preliminary injunctive relief, or 51 days after Act 317 became law and Act 380 was signed by the governor.

(Doc. 25 at 2 (footnotes omitted).) Secretary Landry then cites case law supporting the position that this is too long of a delay. (*Id.* at 2–3.) The Secretary also disputes Plaintiff's position that allowing the injunction would preserve the status quo, contending that "work is already underway

3

to prepare for these laws to be in effect for the November 5, 2024, election, as set forth in the Declaration of Sherri Hadskey." (*Id.* at 4 (footnotes omitted).)

> Should this Court preliminarily enjoin enforcement of either Section 2 of Act 317 (the status quo), or Act 380 (the status quo on August 1, 2024), and should the preliminary injunction have final effect by August 14, 2024, the direction and assistance provided to the registrars of voters at their upcoming seminar would be different than what is currently planned, not to mention different from what the Attorney General has already published about the changes to the laws and which was provided to all candidates who qualified July 17-19, 2024. Thus, maximum confusion will result among all parties concerned, starting with the registrars of voters and the election administration system on down to the voters who rely on the system to handle absentee by mail ballots properly.

(*Id.* at 4–5 (footnote omitted).)

Having carefully considered the matter, the Court will apply *Purcell* in this case. First, as stated above, there's no serious dispute that the instant *MPI* was filed too close to the November 5, 2024, election, so the key issue is whether Plaintiff has demonstrated the four requirements for overcoming *Purcell*.

Plaintiff has not. First and foremost, the Court finds that Plaintiff has unduly delayed bringing this action. Again, Acts 317 and 380 were signed by the Governor on May 28, 2024. Plaintiff did not file suit until July 10, 2024, or 43 days after the laws' enactment. Further, Plaintiff did not file its *MPI* until July 18, 2024, or 51 days after the acts at issue were signed. While the Court is sympathetic to Plaintiff's efforts to get the best counsel possible, Plaintiff could have still proceeded sooner with less-able counsel and fewer resources, particularly with the election fast-approaching. That is, the Court still finds that the delay in this case was unreasonable and increased the risk of substantial confusion before the election. *See Pierce v. N.C. State Bd. of Elections*, No. 23-193, -- F. Supp. 3d. ---, 2024 WL 307643, at *33 (E.D.N.C. Jan. 26, 2024) ("plaintiffs unduly delayed bringing this case by waiting 26 days after the General Assembly enacted SB 758 to file

4

suit and waiting 28 days after the General Assembly enacted SB 758 to seek a preliminary injunction. '[E]quity ministers to the vigilant, not to those who sleep upon their rights.' " (quoting *Texaco P.R., Inc. v. Dep't of Consumer Affs.*, 60 F.3d 867, 879 (1st Cir. 1995))), *aff'd but criticized on other grounds*, 97 F.4th 194, 229 (4th Cir. 2024) ("The district court did not abuse its discretion by heeding the Supreme Court's warnings against federal courts enjoining state election laws in the period close to an election" under *Purcell*).

Second, even assuming there was no undue delay, the Court agrees with the Secretary that the changes in question are not feasible before the election without significant cost, confusion, or hardship, particularly in light of Sherri Hadskey's declaration. Hadskey attests that there were discussions on May 22 and 23, 2024, between the Secretary of State's office and the registrars of voters throughout the state about Acts 302, 317, 380, and 712, with explanations as to the effect of the proposed changes in the law. (Hadskey Decl. ¶ 22, Doc. 19-1.) Further, the Department of State must ensure by August 1, 2024, that "all deadlines triggered by legislative changes effective August 1 are complete and published and sent to Registrar of Voters and Clerks of Court as being in effect," and this includes notifying the registrars of the changes effective August 1 and May 28, 2024, including the changes involved in this case and including "with respect to absentee by mail ballots." (*Id.* ¶ 24.) Candidates have already been informed with a summary of the election offenses and penalties, and this summary was published on the AG's website. (*Id.* ¶ 25.) "Thus candidates have been made aware of and since June the general public has had access to the changes in absentee by mail ballot law." (*Id.*) More appropriate training is already set up on August 14, 2024, for the registrars concerning the 2024 changes in legislation regarding absentee by mail ballots and voting. (*Id.* ¶¶ 27–28.) Hadskey then details all the other future deadlines and actions needed

between now and election day, some of which come as soon as August 23, 2024. (*Id.* ¶¶ 30–35.)

Hadskey concludes as follows:

> [ ] The registrars of voters must be aware of and informed of all the laws applicable to absentee by mail ballots for the federal election well in advance of, and certainly by no later than, September 9, 2024.
>
> [ ] It is my opinion as Commissioner of Elections for the State of Louisiana that should this Court enjoin enforcement of La. R.S. 18:1306E(2)(a), a law that has been in effect for four years, at this time in the election process, administrative confusion and disruption will result. Candidates and voters who previously operated under that law will also be confused causing possible distrust in voting absentee by mail process.
>
> [ ] Should the three new provisions of law also being challenged be enjoined at this stage of the election process, even more administrative confusion will result as well as confusion by the voters, candidates, registrars of voters, and all who in any way use or evaluate absentee by mail ballots. Having been made aware of the changes in law, to then be informed that the changes do not apply, will cause confusion by administrative personnel and inconsistent application of the law by registrars [all] throughout the state at a time when election cycle is already in progress.
>
> [ ] Mailing ballots to voters by registrars of voters is no simple task. It takes place at the same time registrars' offices are performing other required duties, particularly voter registration, which is always higher than normal in the period before a presidential election. At the same time, the registrars are receiving inquiries on how absentee by mail ballots are handled and processed in addition to a myriad of other election duties.
>
> [ ] To notify the registrars at this stage in the election process that a law they have been using is no longer in effect or to inform a registrar that a law that they have been informed has been changed now has not been changed can do nothing but create turmoil in the absentee by mail voting process.

(*Id.* ¶¶ 36–40.)

The Court agrees with Hadskey's assessment. While Plaintiff attempts (unsuccessfully) to poke holes in Hadskey's declaration, Plaintiff offers zero evidence of its own with its supplemental

6

briefing to satisfy the final prong of the *Purcell* exception, even after the Secretary submitted Hadskey's declaration. And contrary to Plaintiff's position, changing the law in the eleventh hour would not preserve the status quo. *See VoteAmerica v. Raffensperger*, 609 F. Supp. 3d 1341, 1369 (N.D. Ga. 2022) ("SB 202 is already the law, and an injunction with respect to the Disclaimer Provision, for example, would not merely preserve the status quo. It would change the law while the election machinery is already grinding. . . . The Court is also mindful of unintended consequences of late-breaking changes to the law."); *In re Ga. S. Bill 202*, 622 F. Supp. 3d 1312, 1344–45 (N.D. Ga. 2022) (finding that the *Purcell* doctrine precluded the issuance of an injunction in part because (a) "Significantly, S.B. 202 is already the law, and an injunction with respect to the Supplemental Zone would not merely preserve the status quo;" (b) "poll workers were recently trained," and an "injunction . . . would thus require the government to go back and retrain workers . . ."; and (c) "While the implementation of an injunction only as to the Supplemental Zone may appear comparatively straightforward, it may also lead to issues that the Court is not equipped to anticipate."). For these additional reasons, Plaintiff has not overcome *Purcell*.

In closing, the Court emphasizes what it stated in *Singleton*:

> It bears repeating:
>
>> When an election is close at hand, the rules of the road must be clear and settled. Late judicial tinkering with election laws can lead to disruption and to unanticipated and unfair consequences for candidates, political parties, and voters, among others. It is one thing for a State on its own to toy with its election laws close to a State's elections. But it is quite another thing for a federal court to swoop in and re-do a State's election laws in the period close to an election.
>
> *Merrill*, 142 S. Ct. at 880–81. "The [Supreme] Court has recognized that 'practical considerations sometimes require courts to allow

7

elections to proceed despite pending legal challenges.' So it is here."
*Id.* at 882 (quoting *Riley v. Kennedy*, 553 U.S. 406, 426 [ ] (2008)).

621 F. Supp. 3d at 632. As in *Singleton*, "[i]f Plaintiff[ ] [is] ultimately entitled to an injunction, then that relief 'can take effect for . . . elections that occur after" 2024. *Id.* (quoting *Merrill*, 142 S. Ct. at 882). For now, however, Plaintiff's *MPI* and *Motion to Expedite* will be denied under *Purcell*, and the 2024 elections will be allowed to proceed.

It bears emphasizing that this ruling of course makes no comment on the merits of Plaintiff's case or the Court's eventual resolution of the issues raised therein. But, as detailed above, the Court must honor the *Purcell* principle and deny Plaintiff's *MPI* and *Motion to Expedite*.

Accordingly,

**IT IS ORDERED** that the *Motion for Preliminary Injunction* (Doc. 12) and the Ex Parte *Motion to Expedite Consideration of Motion for Preliminary Injunction* (Doc. 13) filed by Plaintiff, Disability Rights Louisiana, are **DENIED**.

Signed in Baton Rouge, Louisiana, on July 29, 2024.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**